IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| CITY OF SALEM, VIRGINIA, ) <br> a political subdivision of the ) <br> Commonwealth of Virginia, ) <br> 114 North Broad Street ) <br> City of Salem, Virginia 24153 ) <br> ) <br>     Plaintiff, ) <br> ) <br>     v. ) <br> ) <br> ALBERTO R. GONZALES, ) <br> Attorney General of the ) <br> United States of America; ) <br> WAN J. KIM, ) <br> Assistant Attorney General, ) <br> Civil Rights Division, United States ) <br> Department of Justice, Washington, DC, ) <br> ) <br>     Defendants. ) <br> _____) | <br><br><br><br><br><br><br><br><br><br>Civil Action No.<br><br><br><br><br>Three-Judge Court Requested |

## COMPLAINT

The City of Salem, Virginia, alleges that:

1. This is an action brought for declaratory relief pursuant to Section 4 of the Voting Rights Act of 1965, as amended, 42 U.S.C. §1973b (hereinafter "Section 4"). This Court has jurisdiction over this action pursuant to 28 U.S.C. §1343(a)(4), 28 U.S.C. §2201, 42 U.S.C. §1973b, and 42 U.S.C. §1973l(b).

2. Plaintiff City of Salem ("the City") is a political subdivision of the Commonwealth of Virginia and a political subdivision of a state within the meaning of Section 4(a) of the Voting Rights Act, 42 U.S.C. §1973b(a)(1). City of Salem, Virginia is located in the Shenandoah Valley, approximately 240 miles from Washington, DC. The City covers 15 square miles.

3. The Salem City Council is the governing body that formulates policies for the administration of government in the City. The City has a five member city council. Members are

elected at-large and serve a four-year term. Terms are staggered such that at least two members are up every two years. City Council elects the Mayor and Vice-Mayor from their members for a two-year term.

4. There are no other elected governmental units within the meaning of 42 U.S.C. §1973b(a)(1) that exist within the City of Salem. The Salem City School System is governed by a five-member School Board *appointed* by the Salem City Council. School Board members serve concurrent three-year terms. The Superintendent is the Board's chief executive officer and is appointed for a four-year term. Currently, there is one black member of the Salem School Board and he serves as vice-chairman of the School Board.

5. The City of Salem is a covered jurisdiction subject to the special provisions of the Voting Rights Act, including Section 5 of the Act. 42 U.S.C. §1973c. Under Section 5, the City is required to obtain preclearance from either this Court or from the Attorney General for any change in voting standards, practices and procedures since the Act's November 1, 1964 coverage date for Virginia.

6. According to the 2004 census, City of Salem, Virginia has a total population of 24,347. Of this number, 4,126 persons (or 5.9%) are black and 195 (or 0.8%) are Hispanic. The voting age population of the City, according to the 2000 census, is 19,434. Of this number, 1,966 (3.9%) are black and 407 (0.8%) are Hispanic.

7. There are presently a total of 10 polling locations (and an additional central absentee voting location) located conveniently to voters across the City. All polling places in the City are accessible to voters with physical disabilities.

8. Like other jurisdictions in the Commonwealth of Virginia, the City does not collect or maintain voter registration data by race. Current data show, however, that a significant proportion of the City's voting age population is registered to vote. As of 2005, there were

15,301 registered voters in the City of Salem. This constituted 78.7% of the City's voting age population.

9. The number of registered voters in the City of Salem has risen over the last couple of decades. In 1995, for example, there were only 12,221 registered voters in the City. By 1998, the number of registered voters had grown to 13,352. The number of registered voters in the City has grown even more dramatically over the last decade. From 1998 to 2005, the total number of registered voters in the City grew by 24.3%, from 12,221 in 1995 to 15,201 as of 2005.

10. Voter turnout in elections within the City of Salem (*i.e.,* the percentage of those registered voters who cast ballots) varies according to the offices up for election. In the last three Presidential elections in 1996, 2000, and 2004, for example, 81.2%, 72% and 73.7% of the City's registered voters turned out to vote, respectively. In the General Elections for Governor held in November 1997, 2001, and 2005, 57.7%, 54.9%, and 53.1% of the City's registered voters turned out to vote, respectively. Voter turnout for the Salem City Council elections in the last three election cycles (1996, 2000, and 2004) was 38.2%, 35.6%, and 23.2%, respectively.

11. As a political subdivision of the Commonwealth of Virginia, plaintiff City of Salem has been subject to certain special remedial provisions of the Voting Rights Act, including the provisions of Section 5 of the Act, 42 U.S.C. §1973c. Under Section 5 of the Act, known as the "preclearance" provisions, covered jurisdictions, including the City of Salem, are required to seek and obtain preclearance from either this Court or from the United States Attorney General of any change affecting voting, and such preclearance must be obtained prior to implementation.

12. Since its inception in 1965, the Voting Rights Act has allowed States, which are subject to these special provisions of the Act, to exempt themselves from coverage under the

Act's special remedial provisions, if they can satisfy standards established in the Voting Rights Act. This exemption process is known as "bailout".

13. In 1982, Congress made changes in the exemption standards of the Act. As amended in 1982, Section 4 of the Voting Rights Act provides that States, as well as political subdivisions within those States that are covered under the special provisions of the Act, are entitled to a declaratory judgment in this Court granting an exemption from the Act's special remedial provisions if, during the ten years preceding the filing of the action:

> A) no test or device has been used either for the purpose or with the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority group, within the State or political subdivision seeking a declaratory judgment;
> B) no final judgment has been entered by any court determining that the political subdivision has denied or abridged the right to vote on account of race, color, or membership in a language minority group;
> C) no Federal examiners have been assigned to the political subdivision;
> D) all governmental units within the political subdivision have complied with the preclearance provisions of Section 5 of the Voting Rights Act, 42 U.S.C. 1973c; and
> E) the Attorney General has not interposed any objection to any proposed voting change within the political subdivision and no declaratory judgment has been denied with regard to such a change by this Court under Section 5.

14. As amended in 1982, Section 4 of the Act also requires States and political subdivisions seeking an exemption from the Act's special provisions to show that, during the pendency of the declaratory judgment action seeking such exemption:

> A) Any voting procedure or method of election within the state or political subdivision exists which inhibits or dilutes equal access to the electoral process has been eliminated;
> B) Constructive efforts have been made by the political subdivision to eliminate any intimidation or harassment of persons exercising rights under the Voting Rights Act; and
> C) Expanded opportunities for convenient registration and voting exists within the State or political subdivision.

15. As described in each of the paragraphs set forth below, the City of Salem has fully complied with the provisions of Section 4 of the Act as set forth in paragraphs 13 and 14, *supra*.

16. Over the years, the City of Salem has made numerous submissions to the Department of Justice seeking preclearance of voting changes under Section 5 of the Voting Rights Act. Since 1995, for example, the City has made approximately 29 timely submissions of voting changes to the Department of Justice for Section 5 preclearance. The defendant Attorney General has approved each and every one of these voting changes. Since passage of the Voting Rights Act in 1965, not a single objection has been interposed by the Department of Justice to any voting change in the City. In approving each and every change, the defendants have concluded that the voting changes submitted were free of a racially discriminatory purpose or a racially discriminatory effect. Many of the voting changes made over the years in the City of Salem and submitted for Section 5 preclearance actually expanded the opportunities for City residents to become registered voters and to cast ballots.

17. Voter registration opportunities in the City are readily and equally available to all citizens. The voter registration office for the City is located at 19 East Clay Street in Salem, an annex office next to City Hall. The office is a central and convenient location for City residents. The voter registration office is open from 8 a.m. until 5 p.m., Monday through Friday.

18. Voters in the City of Salem may also register by mail, and voter registration applications are available at locations convenient to voters in the City, such as the Division of Motor Vehicles, Libraries, Post Offices, and other Government agency offices in the City.

19. The opportunity to become a registered voter in the City of Salem is also available under the National Voter Registration Act (the "NVRA") at Department of Motor Vehicle ("DMV") offices and public assistance agencies in the City, as noted above. While in past years most voters became registered at the City's voter registration office, the implementation of the NVRA in Virginia over the last decade has changed the origin of the great majority of

registration applications. Today, many of the City's new registrants register through the DMV and by mail, and the opportunities for persons to register to vote has been made more convenient and available as a result of implementation of the NVRA.

20. The City of Salem has a three-member Electoral Board, appointed pursuant to Virginia state law. Since 2002, one black citizen has served as a member of the three-person Electoral Board. The Electoral Board nominates a roster of persons each February to work as poll workers for a one-year term. Recommendations of persons to be appointed as poll workers originate with the chairs of the local Democratic and Republican parties. No person recommended by a political party chair to serve as a poll official has been rejected by the Electoral Board for at least the preceding ten years.

21. In the last general election held in the City of Salem (November 2005), there were 62 poll workers, one of whom was black. In the last city council election held in the City, there were 45 poll workers, of whom one was black. The percentage of black poll workers in the City roughly aligns with the low percentage of the City's black voting age population (3.9%).

22. Although the percentage of black citizens of voting age in the City is quite small, black citizens have nonetheless played an important role in the voter registration office. As noted above, see ¶20, *supra*, the Electoral Board in the City has had one black member. In addition, since 1996, two black citizens of the City have worked in the voter registration office each February assisting with the registration of high school students turning 18 years of age. One member of the Salem City School Board is black, as is the City's Chairman of the Planning Commission, and the Director of the City's Planning and Development Office (all appointed positions).

23. No person in the City of Salem has been denied the right to vote on account of race, color, or membership in language group for at least the preceding ten years.

24. No "test or device" as defined in the Voting Rights Act (42 U.S.C. §1973b(c)) has been used in the City of Salem as a prerequisite to either registering or voting for at least the preceding ten years.

25. The City of Salem has never been the subject of any lawsuit in which it was alleged that a person (or persons) was being denied the right to vote on account of race, color, or membership in a language minority group.

26. No voting practices or procedures have been abandoned by the City or challenged on the grounds that such practices or procedures would have either the purpose or the effect of denying the right to vote on account of race, color, or membership in a language minority group.

27. The City of Salem has not employed any voting procedures or methods of election that inhibit or dilute equal access to the electoral process by minority voters in the City. Minority voters in the City are not being denied an equal opportunity to elect candidates of their choice to the City Council.

28. Federal examiners have never been appointed or assigned to the City under Section 3 of the Voting Rights Act, 42 U.S.C. §1973a.

29. There are no known incidents in the City where any person exercising his or her right to vote has been intimidated or harassed at the polls (or while attempting to register to vote).

30. The allegations set forth in paragraphs 16 through 29, above, if established, entitle the City of Salem to a declaratory judgment under Section 4 of the Voting Rights Act, 42 U.S.C. §1973b, exempting the City and all governmental units within the City from the special remedial provisions of the Voting Rights Act.

31. Pursuant to 42 U.S.C. §1973b, the City has "publicize[d] the intended commencement …of [this] action in the media serving [the City] and in the appropriate United States post offices."   The City held a public hearing on May 8, 2006, and not a single person spoke at the hearing in opposition to the bailout or raised any questions about the City's proposed bailout.  The City published a legal Notice that it intended to commence and pursue the bailout process and a notice of the public hearing on three occasions in the <u>Main Street Newspaper</u>, a weekly newspaper of general circulation in the City of Salem.  These three publications were made on April 19, April 27, and May 4, 2006.  In addition, the City has posted copies of this Notice "in the appropriate United States post offices" and at various public places throughout City of Salem, including City Hall, the Office of Voter Registration, and the City's public library.

WHEREFORE, plaintiff City of Salem respectfully prays that this Court:

A.  Convene a three-judge court, pursuant to 28 U.S.C. §2284 and 42 U.S.C. §1973b, to hear the claims raised in plaintiff's complaint;

B.  Enter a declaratory judgment that the City of Salem and all governmental units within the City are entitled to a bailout from the special remedial provisions of the Voting Rights Act; and

C.  Grant such other relief as may be necessary and proper as the needs of justice may require.

Respectfully submitted,

**For the Plaintiff CITY OF SALEM:**

/s/ J. Gerald Hebert
J. GERALD HEBERT
Attorney at Law
5019 Waple Lane
Alexandria, Va. 22304
(703) 567-5873 (O)
(703) 567-5876 (fax)
DC Bar No. 447676
Email: jghebert@comcast.net