IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| CITY OF SALEM, VIRGINIA,<br>a political subdivision of the<br>Commonwealth of Virginia,<br>114 North Broad Street<br>City of Salem, Virginia 24153<br><br>    Plaintiff,<br><br>v.<br><br>ALBERTO R. GONZALES,<br>Attorney General of the<br>United States of America;<br>WAN J. KIM,<br>Assistant Attorney General,<br>Civil Rights Division, United States<br>Department of Justice, Washington, DC,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>Civil Action No. 1:06-cv-977<br>(BMK, RJL, HHK)<br>Three-Judge Court |

## STIPULATION OF FACTS

This action was initiated by City of Salem, a political subdivision of the Commonwealth of Virginia (hereafter "the City"). The City seeks a declaratory judgment pursuant to Section 4(a) of the Voting Rights Act of 1965, as amended, 42 U.S.C. §1973b.

The parties have jointly moved this three-judge court for entry of a Consent Judgment and Decree to resolve this action. In support of that motion, the parties have entered into the following stipulation of facts. The facts in this stipulation may be received into evidence in lieu of further proof or testimony.

It is hereby stipulated, by and between the respective parties, that:

1. Plaintiff City of Salem ("the City") is a political subdivision of the Commonwealth of Virginia and a political subdivision of a state within the meaning of Section 4(a) of the Voting

Rights Act, 42 U.S.C. §1973b(a)(1). City of Salem, Virginia is located in the Shenandoah Valley, approximately 240 miles from Washington, DC. The City covers 15 square miles.

2. There are no other elected governmental units within the meaning of 42 U.S.C. §1973b(a)(1) that exist within the City of Salem.

3. The Salem City School System is governed by a five-member School Board appointed by Salem City Council. School Board members serve concurrent three-year terms. The Superintendent is the Board's chief executive officer and is appointed for a four-year term. Currently, there is one black member of the Salem School Board and he serves as vice-chairman of the School Board.

4. The City of Salem is a covered jurisdiction subject to the special provisions of the Voting Rights Act, including Section 5 of the Act. 42 U.S.C. §1973c. Under Section 5, the City is required to obtain preclearance from either this Court or from the Attorney General for any change in voting standards, practices and procedures since the Act's November 1, 1964 coverage date for Virginia.

5. The City of Salem was designated as a jurisdiction subject to the special provisions of the Voting Rights Act on the basis of the determinations made by the Attorney General that Virginia maintained a "test or device" as defined by Section 4(b) of the Act on November 1, 1964, and by the Director of the Census that fewer than 50 percent of the persons of voting age then residing in the state voted in the 1964 presidential election. 42 U.S.C. §1973b(b). The "test or device" triggering preclearance coverage under Section 5 was an article of the Virginia Constitution providing for a literacy test as a prerequisite for citizens to become electors. Va. Const. Art. II, Sec. 20 (1902). The literacy test was repealed by the Virginia Constitution of 1972.

6. The Salem City Council is the governing body that formulates policies for the administration of government in the City. The City has a five member city council. Members are elected at-large and serve a four-year term. Terms are staggered such that at least two members are up every two years. City Council elects the Mayor and Vice-Mayor from their members for a two-year term.

7. According to the 2004 census, City of Salem, Virginia has a total population of 24,347. Of this number, 4,126 persons (or 5.9%) are black and 195 (or 0.8%) are Hispanic. The voting age population of the City, according to the 2000 census, was 19,585. Of this number, 1,067 (5.4%) were black and 148 (0.8%) were Hispanic.

8. Like other jurisdictions in the Commonwealth of Virginia, the City does not collect or maintain voter registration data by race. Current data show, however, that a significant proportion of the City's voting age population is registered to vote. As of 2005, there were 15,301 registered voters in the City of Salem. This constituted 78.7% of the City's voting age population.

9. The number of registered voters in the City of Salem has risen over the last couple of decades. In 1995, for example, there were only 12,221 registered voters in the City. By 1998, the number of registered voters had grown to 13,352. The number of registered voters in the City has continued to rise over the last decade. From 1998 to 2005, the total number of registered voters in the City grew by 24.3%, from 12,221 in 1995 to 15,201 as of 2005.

10. Voter turnout in elections within the City of Salem (*i.e.*, the percentage of those registered voters who cast ballots) varies according to the offices up for election. In the last three Presidential elections in 1996, 2000, and 2004, for example, 81.2%, 72% and 73.7% of the City's registered voters turned out to vote, respectively. In the General Elections for Governor held in

November 1997, 2001, and 2005, 57.7%, 54.9%, and 53.1% of the City's registered voters turned out to vote, respectively. Voter turnout for the Salem City Council elections in the last three elections (1996, 2000, and 2004) was 38.2%, 35.6%, and 23.2%, respectively.

11. There currently are a total of 10 polling locations (and an additional central absentee voting location) located conveniently to voters across the City. All polling places in the City are accessible to voters with physical disabilities.

12. No minority candidates have sought election to the Salem City Council during the last twenty years.

13. From the time of the passage of the Voting Rights Act in 1965 until today, the City of Salem has made numerous preclearance submissions to the United States Department of Justice pursuant to Section 5 of the Voting Rights Act, 42 U.S.C. §1973c.

14. Within the ten years preceding the filing of this action, the City of Salem has not enforced any voting changes without first obtaining Section 5 preclearance.

15. The Attorney General has never interposed a Section 5 objection to any change affecting voting in the City of Salem since the Voting Rights Act was enacted. The City of Salem has never sought Section 5 judicial preclearance from this Court. The City has no pending Section 5 submissions before the Attorney General.

16. Voter registration opportunities in the City are readily and equally available to all of its citizens. The voter registration office for the City is located at 19 East Clay Street in Salem, an annex of City Hall. The office is a central and convenient location for City residents. The voter registration office is open from 8 a.m. until 5 p.m., Monday through Friday.

17. Voters in the City of Salem may also register by mail, and voter registration applications are available at locations convenient to voters in the City, such as the Division of Motor Vehicles, Libraries, Post Offices, and other Government agency offices in the City.

18. The opportunity to become a registered voter in the City of Salem is also available under the National Voter Registration Act (the "NVRA") at Department of Motor Vehicle ("DMV") offices and public assistance agencies in the City, as noted above. While in past years most voters became registered at the City's voter registration office, the implementation of the NVRA in Virginia over the last decade has changed the origin of the registration applications. Today, many of the City's new registrants register through the DMV and by mail, and the opportunities for persons to register to vote have been made more convenient and available as a result of implementation of the NVRA.

19. The City of Salem has a three-member Electoral Board, appointed pursuant to Virginia state law. Since 2002, one black citizen has served as a member of the three-person Electoral Board. The Electoral Board nominates a roster of persons each February to work as poll workers for a one-year term. Recommendations of persons to be appointed as poll workers originate with the chairs of the local Democratic and Republican parties. No person recommended by a political party chair to serve as a poll official has been rejected by the Electoral Board for at least the preceding ten years.

20. Although the percentage of black citizens of voting age in the City is quite small, black citizens have played an important role in the voter registration office. As noted above, see ¶20, *supra*, the Electoral Board in the City has had one black member. In addition, since 1996, two black citizens of the City have worked in the voter registration office each February assisting with the registration of high school students turning 18 years of age. One member of the Salem

City School Board is black, as is the City's Chairman of the Planning Commission, and the Director of the City's Planning and Development Office (all appointed positions).

21. No person in the City of Salem has been denied the right to vote on account of race, color, or membership in language group for at least the preceding ten years.

22. No "test or device" as defined in the Voting Rights Act (42 U.S.C. §1973b(c)) has been used in the City of Salem as a prerequisite to either registering or voting for at least the preceding ten years.

23. No court of the United States has determined that denials or abridgments of the right to vote on account of race or color have occurred in the City of Salem; nor has the City entered into any consent decree, settlement or agreement resulting in any abandonment of a voting practice challenged on such grounds. There is no pending action against the City of Salem alleging such denials or abridgments of the right to vote.

24. The City of Salem has not employed any voting procedures or methods of election that inhibit or dilute equal access to the electoral process by minority voters in the City. Minority voters in the City of Salem are not being denied an equal opportunity to elect candidates of their choice to the city council.

25. Federal examiners have never been appointed or assigned to the City of Salem under Section 3 of the Voting Rights Act, 42 U.S.C. §1973a.

26. Because there is no evidence that there has been any intimidation and harassment of persons exercising rights protected under the Voting Rights Act in the City of Salem within the last ten years, the City has not had to engage in any effort to eliminate such activity.

27. Pursuant to 42 U.S.C. §1973b, the City of Salem has publicized its intention to pursue a bailout. The City held a public hearing on May 8, 2006, and not a single person spoke

at the hearing in opposition to the bailout or raised any questions about the City's proposed bailout. The City published a legal Notice that it intended to commence and pursue the bailout process and a notice of the public hearing on three occasions in the <u>Salem-Times Register</u>, a weekly newspaper of general circulation in the City of Salem. These three publications were made on April 19, April 27, and May 4, 2006. In addition, the City has posted copies of this Notice "in the appropriate United States post offices" and at various public places throughout City of Salem, including City Hall, the Office of Voter Registration, and the City's public library.

28. The United States has determined that it is appropriate to consent to a declaratory judgment in this action, pursuant to Section 4(a)(9) of the Voting Rights Act. This consent is premised upon an understanding that Congress intended Section 4(a)(9) to permit bailout in those cases where the Attorney General is satisfied that the statutory objectives of encouraging Section 5 compliance, and preventing the use of racially discriminatory voting practices, would not be compromised by such consent.

29. The United States' consent in this action is based upon its own factual investigation and consideration of all of the circumstances in this case, including the views of minority citizens in the City, the fact that there are no defendant-interveners, the affirmative steps taken by the City to increase voter participation, and the absence of evidence of discrimination in the electoral process within the City.

Approved as to form and content:

                                          For the Plaintiff CITY OF SALEM:

*/s/ J. Gerald Hebert*
J. GERALD HEBERT
Attorney at Law
5019 Waple Lane
Alexandria, Va. 22304
(703) 567-5873 (O)
(703) 567-5876 (fax)
DC Bar No. 447676

**For the Defendants:**

ALBERTO R. GONZALES
Attorney General

WAN J. KIM
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney

*/s/ Christy McCormick*
JOHN K. TANNER
DC Bar No. 318873
CHRISTY A. McCORMICK
VA Bar No. 44328
Attorneys, Voting Section
Civil Rights Division
United States Department of Justice
Room 7254 - NWB
950 Pennsylvania Ave., N.W.
Washington, DC 20530
(202) 514-2386